IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SONJA PETERMANN,

                                    Plaintiff,                          OPINION and ORDER

    v.

ASPIRUS, INC.,                                                          22-cv-332-jdp

                                    Defendant.

---

      Plaintiff Sonja Petermann was a nurse and care coordinator for defendant Aspirus, Inc. until she was terminated in December 2021. Petermann contends that Aspirus violated her rights under federal law in three ways: (1) requiring her to undergo testing for COVID-19, in violation of the Americans with Disabilities Act (ADA); (2) requiring her to administer booster vaccine shots for COVID-19, in violation of Title VII of the Civil Rights Act; and (3) terminating her when she refused to give the shots, also in violation of Title VII.[1] For the reasons explained below, the court will allow Petermann to proceed on claims under Title VII that Aspirus retaliated against her for exercising her rights under Title VII, but the remaining claims will be dismissed for failure to state a claim or failure to exhaust administrative remedies.

BACKGROUND

      The following allegations are taken from the complaint and accepted as true for the purpose of Aspirus's motion to dismiss.

---

[1] Petermann also refers to age discrimination several times in her brief, but the court has not considered that issue because she doesn't allege in her complaint that Aspirus discriminated against her because of her age, and she doesn't explain in her brief what her theory of age discrimination is.

Aspirus is a healthcare provider that operates hospitals in Wisconsin. In 2018, Petermann began working for Aspirus as a nurse and in 2019 she became the direct-system care coordinator in Aspirus's office in Wausau.

In August 2021, Aspirus required all of its employees to either receive a COVID-19 vaccine or submit to biweekly testing. Petermann was not vaccinated, and she chose the testing option.

In November 2021, Aspirus required all employees to receive a COVID-19 vaccine or be terminated, unless the employee obtained an exemption from Aspirus. Petermann asked for a religious exemption, and she provides the following description of her reasons in her complaint:

> Plaintiff's sincerely held religious beliefs prohibited her from taking the Covid-19 vaccine. Plaintiff Petermann is a Christian who believes, as she has discerned from prayer and study of Scripture, that her body is a Temple of God. Plaintiff Petermann believes it would violate the sanctity of her conscience to take the vaccine.

Dkt. 1, ¶ 18.

Aspirus granted Petermann's exemption request. At the same time, Aspirus informed Petermann that she would be required to administer vaccine booster shots for COVID-19. "Plaintiff refused on the basis that [it] would also violate her religious beliefs, as set forth in Plaintiff's request for a religious exemption, and requested that she be exempted from giving the booster shots on the same basis." *Id.*, ¶ 21. Giving booster shots was not part of Petermann's job description, and "at least nine employees under Plaintiff's direction were willing to give the booster shots." *Id.*, ¶ 23.

Aspirus denied Petermann's request for an exemption and terminated her on December 16, 2021.

2

ANALYSIS

Petermann is asserting claims under both Title VII and the ADA, and Aspirus seeks dismissal of all these claims. The question on a motion to dismiss is whether the plaintiff provided the defendant with fair notice of her claims and alleged facts plausibly suggesting that she is entitled to relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020).

## A.  Title VII

The court understands Petermann to be asserting two claims under Title VII: (1) Aspirus failed to accommodate her religious beliefs by terminating her for her refusal to administer COVID-19 vaccine boosters; and (2) requiring Petermann to administer the vaccine to others and then terminating her was retaliation for seeking an exemption to the requirement to receive the vaccine.

### 1.  Failure to accommodate

Title VII prohibits an employer from discriminating against an employee on the basis of religion, and the definition of discrimination includes a failure to provide a reasonable accommodation for an employee's religious beliefs. *See* 42 U.S.C. § 2000e-2(a)(1) and (j). To prevail on a Title VII claim for failure to accommodate religion, an employee must prove three things: (1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to the employer's attention; and (3) the religious observance or practice was the basis for the employee's discharge or other discriminatory treatment. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013). If the employee shows these elements, the burden then shifts to the employer to show that it could not accommodate the employee's religious belief or practice without causing the employer undue hardship. *Id.*

3

Aspirus focuses on the first element—whether Petermann's objection to the vaccine was religious in nature—so the court will do the same. Petermann says that she "is a Christian who believes, as she has discerned from prayer and study of Scripture, that her body is a Temple of God," so "it would violate the sanctity of her conscience to take the vaccine."

This court observed in *Passarella v. Aspirus, Inc.* that a religious belief that the body is a temple of God is not in itself inconsistent with receiving a vaccine. No. 22-cv-287-jdp, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023). Many people hold that belief without also believing that receiving a vaccine defiles the body. The important question isn't whether an employee has a religious belief not to mistreat her body; the question is whether the employee's belief that the vaccine qualifies as mistreatment is itself based in religion.

If Petermann believed that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection, not a religious objection. *See id.* But if her objection to the vaccine was rooted in a belief "that she must remain as God made her," that would be sufficient to show a religious conflict at the pleading stage. *See id.* at *7. In this case, Petermann doesn't explain in her complaint or her brief how receiving the vaccine would be inconsistent with a particular religious observance or practice.

The court need not decide whether Petermann plausibly alleged a religious objection to receiving the vaccination because she concedes that Aspirus granted her an exemption to receiving the vaccination, and Aspirus assumes for the purpose of its motion that her request was religious in nature. Aspirus contends instead that Petermann's objection was limited to receiving the vaccine and did not extend to administering the vaccine. According to the complaint, Petermann didn't raise a new objection when Aspirus required her to administer

the vaccine. Instead, she simply asked that she "be exempted from giving the booster shots on the same basis" that she was exempted from receiving the vaccine. Dkt. 1, ¶ 21.

The court agrees with Aspirus that Petermann's complaint doesn't identify a religious objection to administering the vaccine, even assuming that she identified a religious objection to receiving the vaccine. Her objection was specific to receiving the vaccine and its effect on her own body. She didn't give a religious reason (or any reason, really) why she couldn't administer the vaccine to others. Her belief that her body is a temple wouldn't preclude her from giving shots to patients who want to receive them.

In her opposition brief, Petermann inserts a new allegation that she "refused to give shots that she would not receive herself" because "as a Christian, she is called to do unto others as she would have them do unto her." Dkt. 9, at 12. A belief in the Golden Rule wouldn't necessarily prohibit a person who doesn't want to receive a medical treatment from providing that same treatment to another person who is seeking that treatment. But even if the court assumes that Petermann had a religious objection to both giving and receiving the vaccine, this new allegation fails under the second element of the claim because Petermann doesn't allege that she communicated her understanding of the Golden Rule to Aspirus when she asked for an exemption.

The court will dismiss Petermann's failure-to-accommodate claim for failure to state a claim upon which relief may be granted.

### 2. Retaliation

A retaliation claim under Title VII has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer subjected the employee to a materially adverse employment action; and (3) there is a causal connection between the protected activity and

the adverse action. *Gracia v. SigmaTron International, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021). The court understands Petermann to be contending that her protected activity was her request to be exempted from receiving the vaccine and that Aspirus retaliated against her for that request by both requiring her to administer COVID-19 vaccine booster shots and by terminating her employment.

Aspirus's arguments are focused only on the third element.[2] Specifically, Aspirus contends that Petermann hasn't adequately alleged that it required her to administer booster shots or fired her because of her request for a religious exemption from receiving the vaccine. The question is a close one, but the court concludes that Petermann has stated a claim under federal pleading standards and that Aspirus's arguments are better reserved for a summary judgment motion.

The requirements for pleading retaliation are not onerous. Traditionally, the rule was that a plaintiff states a retaliation claim if she simply alleges that the defendant took a particular adverse action because she engaged in particular protected conduct. *E.g.*, *Thomson v. Washington*, 362 F.3d 969, 970–71 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The court adhered to that standard even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009), which tightened federal pleading standards. *See Henderson v. Wilcoxen*, 802

---

[2] Aspirus's opening brief includes a section heading that "Petermann fails to establish that the requirement to administer COVID-19 vaccines was an adverse employment action." Dkt. 6, at 6. But Aspirus's actual argument in this section of its brief is that Petermann failed to allege facts suggesting that the requirement wasn't "neutral." *Id.* at 8. That's an argument about whether Aspirus imposed the requirement on Petermann because of her request for a religious exemption. In its reply brief, Aspirus says nothing about the adverse action element. Neither of Aspirus's briefs address whether the requirement was "materially adverse," so the court will not consider that issue.

F.3d 930, 933 (7th Cir. 2015). Without overruling the earlier cases, the court of appeal has stated in more recent cases that a conclusory allegation of retaliatory intent is not enough. Rather, the plaintiff must "plausibly explain what led him to believe his treatment was because of the protected activity." *Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. 2022) (citing *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774 (7th Cir. 2022)).

In this case, Petermann points to three allegations to support her belief that Aspirus retaliated against her because of her exemption request: (1) Aspirus told Petermann that she had to administer booster shots at the same time it granted her exemption request; (2) administering vaccines was outside Petermann's job duties; and (3) nine other employees who were less senior than Petermann were not required to administer vaccines, even though they were willing to do so. These allegations are not compelling, but they are enough to raise Petermann's retaliation claims above the level of speculation, which is all that is required at the pleading stage. *See Twombly*, 550 U.S. at 545.

Aspirus says that requiring Petermann to administer vaccines was "a neutral employment change necessary at the time to help Aspirus continue to function during the pandemic and meet community demand." Dkt. 6, at 8. But this factual assertion is outside the complaint, so the court may not consider it. If Aspirus has evidence that it required Petermann to perform duties outside her job description out of necessity or because of any other nonretaliatory reason, Aspirus may present that evidence in a motion for summary judgment. But at this stage, the court must accept Petermann's allegations as true.

The alleged connection between Petermann's initial exemption request (from receiving the vaccine) and Petermann's termination is more tenuous than the alleged connection between the initial request and the requirement to administer vaccines. After all, Petermann

acknowledges in her complaint that Aspirus granted her initial exemption request and that she was terminated "[a]s a result" of Aspirus's refusal to grant her religious exemption for administering the vaccine. Dkt. 1, ¶ 22. Petermann's theory appears to be that Aspirus wanted to fire her when she requested an exemption from receiving the vaccine, but it believed it couldn't lawfully do that, so it manufactured the requirement to administer vaccines, expecting her to refuse, and providing Aspirus with a basis to fire her. *See id.*, ¶ 23. This theory stretches plausibility to the breaking point. But Petermann's two retaliation claims are closely related. If it is plausible to infer that Aspirus required Petermann to administer vaccines to retaliate against her, it is only one more inferential step to conclude that Aspirus was also looking for a basis to terminate her. Because the court is allowing Petermann to proceed on her claim that Aspirus retaliated against her by requiring her to administer vaccines, it makes sense to allow her to proceed on her other retaliation claim as well.

The court will deny Aspirus's motion to dismiss as it relates to Petermann's retaliation claims. At summary judgment or trial, Petermann will have to come forward with specific evidence showing the causal connection between any protected conduct and Aspirus's decision to require her to administer the vaccine and the decision to terminate her.

### B. Americans with Disabilities Act

Petermann's claim under the ADA is that Aspirus subjected her to testing for COVID-19, in violation of 42 U.S.C § 12112(d)(4)(A), which prohibits employers from "requiring a medical examination" unless certain criteria are met.[3] Aspirus doesn't challenge

---

[3] Petermann also alleges in her complaint that Aspirus's vaccine mandate violates the ADA. But Petermann admits in her complaint that Aspirus granted her request for an exemption to the vaccine mandate, and she says nothing about the mandate in her brief, so the court does not understand Petermann to be asserting a separate claim under the ADA challenging the

this claim on the merits but contends instead that Petermann didn't file an administrative charge on this claim, as she was required to do. *See* 42 U.S.C. § 12117(a); *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018).

The failure to exhaust administrative remedies is an affirmative defense, *see Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007), which means that courts normally do not decide the issue in the context of a motion to dismiss, *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). But there would be no point in deferring this issue until summary judgment. Petermann doesn't object to Asprius's motion on the ground that it is premature, she doesn't challenge the admissibility of the charge that Aspirus filed, and she concedes in her opposition brief that she didn't file a charge with the Equal Employment Opportunity Commission about her ADA claim before filing this case. *See* Dkt. 9, at 20–21. Her contention is that she wasn't required to file a separate charge because her ADA claim is sufficiently related to her Title VII claims.

Other former Aspirus employees represented by the same counsel made the same argument in *Passarella*, 2023 WL 2455681, at *8, and the argument fails for the same reason in this case. Petermann's charge refers to Aspirus's requirements to receive and administer the vaccine. Dkt. 6-1. It says nothing about the testing requirement. As the court explained in *Passarella*, a plaintiff cannot show exhaustion with a charge that challenges different conduct. 2023 WL 2455681, at *8 (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994), and *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

---

vaccine mandate.

Petermann says in her brief that she has "asserted a second EEOC claim, for which there will be a Right to Sue letter at some point," so the court should allow the claim to proceed. Dkt. 9, at 21. Presumably, Petermann is referring to a new EEOC charge that addresses the testing requirement. But the plaintiffs in *Passarella* made the same argument, and the court rejected it because a plaintiff is required to finish the administrative process before she files her lawsuit. *Id.* at *8 (citing *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014); *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003); and *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004)).

The court will dismiss Petermann's ADA claim without prejudice for her failure to exhaust her administrative remedies before filing this lawsuit.

ORDER

IT IS ORDERED that defendant Aspirus, Inc.'s motion to dismiss, Dkt. 5, is GRANTED in part and DENIED in part. The motion is GRANTED as to plaintiff Sonja Petermann's claim that Aspirus failed to accommodate her religion in violation of Title VII by requiring her to administer the COVID-19 vaccine booster shots, and that claim is DISMISSED with prejudice for failure to state a claim. The motion is GRANTED as to Petermann's claim that Aspirus violated the Americans with Disabilities Act by subjecting her to COVID-19 testing, and that claim is DISMISSED without prejudice for Aspirus's failure to exhaust her administrative remedies. The motion is DENIED as to Petermann's claims that

Aspirus retaliated against her in violation of Title VII by requiring her to administer vaccines and by terminating her.

Entered March 27, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge